UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAGINAW PROPERTY, LLC,

        Plaintiff,                          Case Number 08-13782-BC
                                                  Honorable Thomas L. Ludington
v.

VALUE CITY DEPARTMENT STORES,
LLC and RETAIL VENTURES, INC.,

        Defendants.
_____/

**ORDER DETERMINING SCOPE OF STAY CASE PURSUANT TO 11 U.S.C. § 362 AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

On September 3, 2008, Plaintiff Saginaw Property, LLC ("Plaintiff") filed a complaint seeking to recoup rental payments from Value City Department Stores, LLC ("Defendant VCDS") and Defendant Retail Ventures, Inc. ("Defendant RVI"). It is undisputed that Value City of Michigan, Inc. ("VCMI") leased retail space from Plaintiff in 1997 and breached the lease in 2008. The parties also agree Value City Department Stores, Inc. ("VC Inc.") executed a guaranty in support of the lease. Through a series of transactions on October 8, 2003, Plaintiff contends that Defendant RVI became the successor of Defendant VCDS and responsible for the guaranty. In addition, Defendant VCDS and VCMI voluntarily petitioned for Chapter 11 bankruptcy protection in the Southern District of New York on October 26, 2008. Defendant RVI has not filed for bankruptcy protection. The parties notified the Court of Defendant VCDS's bankruptcy petition.

On November 7, 2008, the Court ordered the parties to file motions addressing the appropriate scope of the automatic stay. Dkt. # 11. The parties also each moved for partial summary judgment.[1]

On November 21, 2008, Plaintiff filed a motion to determine the effect of Defendant VCDS's bankruptcy petition and for summary judgment. For the reasons discussed below, the bankruptcy stay does not apply to Defendant RVI and the Court will deny the parties' cross-motions for summary judgment.

I

On August 13, 1997, MRSLV Saginaw, LLC ("MRSLV"), as landlord, and VCMI, as tenant, entered into a twenty-year lease for a commercial premises in Saginaw, Michigan. The lease established an annual rent for $823,472.00, to be paid in monthly installments of $68,622.67.

Contemporaneous to the execution of the lease agreement, VC Inc. and MRSLV executed a guaranty of the lease agreement. Dkt. # 12-3. VC Inc. entered the agreement "together with its successors and assigns, including, without limitation, any entity succeeding thereto by merger, consolidation or acquisition of its assets substantially as an entity" ("Successor Provision"). *Id.* at 4. As the guarantor, VC Inc. "unconditionally and irrevocably guarantee[d]" the tenant's duties created by the lease. *Id.* The guaranty is unaffected by "the voluntary or involuntary liquidation, dissolution, sale of all or substantially all of the assets . . . bankruptcy . . . reorganization . . . ." *Id.* at 6, ¶ 2(g). The guaranty was binding on the successors and assigns of MRSLV and VC Inc. *Id.* at 15, ¶ 16. On September 21, 2005, Plaintiff acquired the shopping center owned by MRSLV,

---

[1] Defendant RVI's request for summary judgment violates the Court's practice guidelines because the motion is included in a response to Plaintiff's motion for summary judgment. The pleading should have been stricken at the time of filing. *See* http://www.mied.uscourts.gov/Judges/practice_guidelines.cfm. Regardless of the procedural defect, Defendant RVI would not be entitled to summary judgment at this stage for the reasons stated in this Order.

including the leased premises. In April of 2008, VCMI vacated the property and ceased paying monthly rent.

Plaintiff characterizes Defendant RVI as the successor to Defendant VCDS, acknowledging that Defendant VCDS did not merge with Defendant RVI as it earlier contended. Defendant RVI asserts its sole relationship to Defendant VCDS is as a shareholder.

The current ownership interests of the corporate entities are as follows: VCMI is a Michigan "C" corporation that is a wholly-owned subsidiary of Defendant VCDS, an Ohio Limited Liability Company. Dkt. # 12-4 at 37.[2] Defendant VCDS is a wholly-owned subsidiary of Value City Holdings, Inc. ("VC Holdings"), a Delaware corporation. *Id.* Defendant RVI, an Ohio "C" corporation, has a nineteen percent interest in VC Holdings. *Id.* The remaining eighty-one percent ownership interest is owned by VCHI Acquisition, Company ("VCHI Acquisition"), a Delaware corporation. *Id.*

On October 8, 2003, VC Inc. was reorganized. The 8K form produced for the Securities and Exchange Commission provides as follows:

> Effective October 8, 2003, [VC Inc.] reorganized [its] corporate structure into a "holding company" structure, consisting of a holding company conducting all of the business previously conducted by [VC inc.] through [VC Inc.] and other wholly-owned direct and indirect operating subsidiaries. The name of the new holding company is [Defendant RVI] and as with [VC Inc.], it is an Ohio corporation. As described below, in connection with reorganization, holder of common stock of [VC Inc.] became holders of an identical number of shares of common stock of [Defendant RVI], and [VC Inc.] became a wholly-owned subsidiary of [Defendant RVI].
>
> In the merger, [VC Inc.] merged with Value City Merger Sub, Inc. ("Merger Sub"), a newly-formed, wholly owned direct subsidiary of [Defendant RVI] (the "Merger"), with [VC Inc.] as the surviving corporation of the Merger. In the Merger,

---

[2] See flowchart below. This was included in Defendant VCDS's bankruptcy filing.

> each outstanding share of common stock of [VC Inc.] . . . was automatically converted into one share of common stock of RVI. Each share of Value City Merger Sub, Inc. common stock was converted into a share of [VC Inc.] common stock
>
> *   *   *
>
> As a result of the reorganization, all the business and operations previously conducted by [VC Inc.] and its subsidiaries are now conducted by [Defendant RVI] and its subsidiaries, and the assets and liabilities of [Defendant RVI] and its subsidiaries on a consolidated basis are the same as the assets and liabilities of [VC Inc.] and its subsidiaries immediately before the reorganization.

Dkt. # 12-5 at 2-3.

On October 7, 2003, Defendant RVI issued a press release entitled "[VC Inc.] Is Now [Defendant RVI]." Dkt. # 14-3 at 2. The press release provides the following summary of the reorganization:

> [VC Inc.] today announced the adoption of a new holding company structure for its operating units and stand-alone service organization. As a result, the stock of [VC Inc.] will be exchanged on a share-for-share basis for shares of the new holding company, [Defendant RVI], and [VC Inc.] will become a wholly owned subsidiary of [Defendant RVI].

Dkt. # 14-3 at 2.

Defendant RVI's chief financial officer, James McGrady ("Defendant RVI's CFO"), described the restructuring as follows:

> [VC Inc.] caused [Defendant RVI] to be incorporated as a direct, wholly-owned subsidiary of [VC Inc.]. [Defendant RVI] then caused certain subsidiaries, including Merger Sub, to be incorporated as wholly-owned subsidiaries of [Defendant RVI]. Merger Sub, not [Defendant RVI], was then merged with and into [VC Inc.]. Through the merger between [VC Inc.] and Merger Sub, (1) [Defendant RVI] received newly-issued common shares of [VC Inc.] in exchange for all of the common shares of Merger Sub held by [Defendant RVI], (2) all of [Defendant RVI]'s common shares (which were owned by [VC Inc.]) were cancelled and (3) the outstanding common shares of [VC Inc.] (i.e., the public shares) were converted into and exchanged for common shares of [Defendant RVI].

> Following the reorganization of the corporate structure . . . [VC Inc.] remained a separate and distinct corporate entity and continued to maintain its own assets and liabilities. [Defendant RVI] held 100% of the investment of [VC Inc.].
>
> In December 2004, [VC Inc.] completed another corporate reorganization whereby [VC Inc.] merged with and into [Defendant VCDS], a newly created, wholly-owned subsidiary of [Defendant RVI].
>
> On January 23, 2008, [Defendant RVI] disposed of an 81% ownership interest in its Value City Department Stores business to VCHI Acquisition Co., a newly formed entity owned by VCDS Acquisition Holdings, LLC, Emerald Capital Management[,] LLC and Crystal Value, LLC. [Defendant RVI] currently owns 19% of Value City Holdings, Inc.[,] which continues to wholly own [Defendant VCDS]. This 19% holding is passive only and does not confer any rights of management or operational control to [Defendant RVI]. Any management or operational actions taken by Value City Holdings, Inc. since January 23, 2008 occurred without the involvement of [Defendant RVI].
>
> The October 8, 2003 reorganization of [VC Inc.] was not a merger or consolidation between [Defendant RVI] and [VC Inc.]. Furthermore, the 2003 reorganization of [VC Inc.] was a corporate restructuring and not an acquisition by [Defendant RVI] of the assets of [VC Inc.] substantially as an entirety [sic].

Dkt. # 13-3 at 2-3.

Lastly, Plaintiff emphasized at oral argument that prior to October 8, 2003, Defendant VCDS controlled three primary assets: (1) Value City Department Stores, (2) Feline's Basement Department Stores ("Feline"), and (3) DSW Stores ("DSW"). Plaintiff asserted, albeit without evidentiary support, at some unknown point in that the corporate realignment that Defendant VCDS was stripped of its ownership of Feline and DSW and transferred to Defendant RVI.

II

11 U.S.C. § 362(a)(1) operates to stay any judicial action against a debtor that originated before the filing of the bankruptcy petition. A district court should only extend an automatic stay to a non-bankrupt defendant in "unusual circumstances." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 314 (6th Cir. 2000) (citation omitted). "Such circumstances usually include when the

debtor and the non-bankrupt party are closely related or the stay contributes to the debtor's reorganization." *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993).

Defendant RVI urges the Court to stay the entire action because the nature of the relationship between Defendant RVI and Defendant VCDS is central to whether Defendant RVI is the successor to VC Inc.'s interests and liabilities. Dkt. # 13 at 12. While Defendant's assertion is accurate, it appears inapposite to the issue of the scope of the stay. Indeed, as Defendant RVI argues, it is merely a passive shareholder of Defendant VCDS. A judgment against Defendant RVI would not affect the assets of Defendant VCDS and at most several of Defendant VCDS's employees or corporate officers' deposition testimony might be needed to clarify certain transactions between the entities. Thus, the Court will not extend the stay to Defendant RVI.

### III

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. "[T]he party opposing the summary judgment motion must do more than simply show that there is some "metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (citations and quotations omitted).

IV

Plaintiff contends that the substantive question is whether Defendant RVI is considered Defendant VCDS's successor in interest. Plaintiff reasons the Successor Provision does not exhaust every possible manner that a successor in interest could be created under the guaranty. Plaintiff focuses on the "without limitation" contained in the guaranty, contending that it serves as a basis to conclude Defendant RVI is VC Inc.'s successor. Consequently, corporate reorganization could extend successor rights and obligations as to Defendant RVI.

Defendant RVI asserts the Successor Provision does not create successor liability because the Successor Provision does not contemplate the effect of reorganization. In Defendant RVI's view, the guaranty only established successor liability through merger, consolidation, or acquisition of assets–none of which occurred in this instance. Rather, Defendant RVI contends it is a shareholder of Defendant VCDS.

Under Michigan Law, successor liability may be created in circumstances other than a merger. *See RDM Holdings, Ltd. v. Cont'l Plastics Co.*, --- N.W.2d ----, 2008 WL 5266109 (Mich. Ct. App. 2008) (quoting *Foster v. Cone-Blanchard Mach. Co.*, 597 N.W.2d 506, 509-10 (Mich. 1999)(citing *Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873 (Mich. 1976))). While Plaintiff's initial pleadings allege that the October 7, 2003 press release demonstrates that Defendant RVI and VC Inc. merged, it's reply brief acknowledges that the entities did not merge. Indeed, the existing record indicates that a merger did not occur. Rather, relying on the same press release, Plaintiff's theory of successor liability is now predicated on the allegation that Defendant RVI stripped Defendant VCDS of significant assets for inadequate consideration and that Defendant RVI maintained the continuity of Defendant VCDS's business. Although the record before the Court does not establish this assertion to be a matter of fact, Plaintiff's theory is potentially viable. For that reason, the Court will deny plaintiff's motion for summary judgment[3] and permit discovery. After that period, the parties may again file motions for summary judgment.

IV

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment [Dkt. # 12] is **DENIED WITHOUT PREJUDICE**.

It is further **ORDERED** that this matter is **STAYED** pursuant to 11 U.S.C. § 362 with respect to Defendant Value City Department Stores, LLC until further order of the Court.

---

[3] While Defendant RVI requested summary judgment in its response brief, this practice is impermissible. Notwithstanding this procedural irregularity, Defendant's RVI's request would be denied for the substantive reasons discussed in this order.

It is further **ORDERED** that the stay pursuant to 11 U.S.C. § 362 shall not extend to the action alleged against Defendant Retail Ventures, Inc.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: January 27, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 27, 2009

s/Tracy A. Jacobs
TRACY A. JACOBS